**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-02436-MSK-MJW

**DANIELLE DIXON,**

    Plaintiff,

v.

**RJM ACQUISITIONS LLC,**

    Defendant.

---

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND ENTERING
JUDGMENT IN FAVOR OF DEFENDANT**

---

**THIS MATTER** comes before the Court on the Plaintiff Danielle Dixon's Motion for Summary Judgment **(#35, 36)**, the Defendant RJM Acquisitions LLC's Response **(#37)**, and Ms. Dixon's Reply **(#38)**. The Plaintiff's supplemental submissions **(#41, 42)** in response to the Court's January 29, 2015 Order have also been considered.

## I. Material Facts

The facts of this case are largely undisputed, but where disputed are construed in favor of the non-movant. Ms. Dixon held a bank account with Bank of America. After her account was overdrawn, Bank of America assigned its rights to collect to the Defendant.

On July 25, 2013, Ms. Dixon and a representative of the Defendant had a telephone conversation with regard to the overdrawn account. The following exchange took place:

| | |
|---|---|
| Representative: | Ok, the account I have here for you is an overdrawn checking account with Bank of America with a balance of $102.99. |
| Ms. Dixon: | Well yeah I found this on my credit report and this is hurting my credit scores. |

1

| | |
|---|---|
| Representative: | Ok, how may I help you with this today? |
| Ms. Dixon: | Well what do I have to do to get this off my credit report? |
| Representative: | Once it's paid if you like we can have it terminated. |
| Ms. Dixon: | Well what? |
| Representative: | I said once it's paid if you like we can have it removed. |
| Ms. Dixon: | Ok so I have to pay it to take it off my credit report? |
| Representative: | Well yes, it wouldn't be removed until you finish paying it. |
| Ms. Dixon: | Ok, I don't have the money to pay this. |
| Representative: | I'm sorry? |
| Ms. Dixon: | I said I don't have the money to pay this. |
| Representative: | Ok, you don't have to pay it right now, but once you're able to pay it, if you like it removed, we at that time remove it for you. |
| Ms. Dixon: | Ok, and how much is it? |
| Representative: | $102.99. |
| Ms. Dixon: | $102.99. |
| Representative: | Correct. |
| Ms. Dixon: | So it stays on my credit report until it is paid. |
| Representative: | Correct. |
| Ms. Dixon: | Ok, that's not too bad, I don't have the money for this, things are tight. |
| Representative: | Ok, no problem.  I will note it [on] the account for you. |
| Ms. Dixon: | Ok, well what if I pay $20.00 on this now? |
| Representative: | You can do that if you like, if you can make like monthly payments [] you can certainly do that. |
| Ms. Dixon: | Um, where do I mail the payment? |

[Representative gave Ms. Dixon a mailing address and an account number to reference on her payment.]

| | |
|---|---|
| Ms. Dixon: | Ok, well I don't agree that I owe that much, that's too much. |
| Representative: | That is the balance the bank is stating you owed at the time the account was closed. |
| Ms. Dixon: | I don't owe that much. |
| Representative: | How much do you feel you owe? |
| Ms. Dixon: | Not that much, I feel that all I owe is $20.00. |
| Representative: | Well this is the balance the bank is stating is owed, so why do you feel you only owe $20.00? |
| Ms. Dixon: | Anyway we can settle for less? |
| Representative: | Do you have an amount in mind I could check but we couldn't settle for that low? |
| Ms. Dixon: | I mail the $20.00 money order today and see what I can do down the road. |
| Representative: | Ok. |

On July 31, 2013 and September 1, 2013, the Defendant reported the debt to Experian and Transunion credit reporting agencies. It did not communicate to the agencies that the debt was disputed.

Ms. Dixon alleges that the Defendant's failure to report the debt as disputed constitutes violations of various sections of the Fair Debt Collections Practices Act (FDCPA), including 15 U.S.C. §§ 1692e and 1692f, and seeks statutory damages, costs, and attorney fees pursuant to 15 U.S.C. § 1692k. The Defendant asserts the bona fide error defense pursuant to § 1692k(c). Ms. Dixon now moves for summary judgment on her claims, as well as on the Defendant's affirmative defense.

## II. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### III. Analysis

Ms. Dixon contends that the Defendant's failure to communicate to the credit reporting agencies that the debt was disputed constituted a false and misleading representation in connection with collecting the debt violated FDCPA §§ 1692e, 1692e(2)(A), 1692e(8), and 1692e(10).  She further contends that the Defendant's actions constitute an unfair and unconscionable means to collect or attempt to collect a debt in violation of FDCPA § 1692f.

The FDCPA generally prohibits a debt collector from using "any false, deceptive, or misleading representation or meaning in connection with the collection of any debt."  15 U.S.C. § 1692e.  Conduct that expressly violates this prohibition includes "[t]he false representation of the character, amount, or legal status of any debt," § 1692e(2)(A), "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," § 1692e(8), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," § 1692e(10).  The FDCPA further prohibits a

debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

There is no dispute that the FDCPA is applicable — Ms. Dixon is a "consumer," the Defendant is a "debt collector," and the sum the Defendant attempted to collect is a "debt," as those terms are defined in § 1692a of the FDCPA. The parties also agree that in reporting information to the credit reporting agencies, the Defendant was attempting to collect the debt. The only disputed element with regard to each of Ms. Dixon's claims is whether the Defendant communicated false information or made false representations to the credit reporting agencies by failing to report the debt as disputed.

The parties agree that a telephone conversation took place between Ms. Dixon and the Defendant in July 2013, and they even agree as to what was said. They disagree, however, as to whether Ms. Dixon actually "disputed" the debt during that conversation. Ms. Dixon argues that she clearly disputed the debt when she said, "Ok, well I don't agree I owe that much, that's too much," and by answering "I don't owe that much," in response to the representative's statement of the balance reported owing. The Defendant, on the other hand, argues that Ms. Dixon was simply trying to negotiate the amount due rather than disputing the debt, as evidenced by statements such as "Anyway we can settle for less?" and "I mail the $20.00 money order today and see what I can do down the road." The Defendant also points to Ms. Dixon's deposition for support. When asked what she meant when she said "I don't agree that I owe that much, that's too much," Ms. Dixon responded, "I feel that all I owed was — was $20, because it's all I could afford, because things are tight — things were tight."

The FDCPA does not define the terms "disputed" or "dispute." The Court therefore construes them according to their ordinary meaning. *See Asgrow Seed Co. v. Winterboer*, 513

6

U.S. 179, 187 (1995).  "To dispute" something, such as a debt, ordinarily means "to call into question," or "to oppose."  *See* Merriam-Webster's Collegiate Dictionary 335 (10th ed. 2001). The Defendant's training materials state that a "dispute" means that the consumer "questions or refuses responsibility for the debt."

The only evidence submitted by Ms. Dixon that she disputed the debt before the Defendant communicated with the credit reporting agencies is the transcription of the telephone conversation she had with one of the Defendant's representatives in July 2013.  Viewing that evidence in the light most favorable to the Defendant, the Court finds that it is not sufficient to establish that Ms. Dixon disputed the debt.  When read in context, Ms. Dixon's statement that "I don't owe that much" appears to be inconsistent with and perhaps an alternative  to other statements  such as  "Anyway we can settle for less?" and "I mail the $20.00 money order today and see what I can do down the road,".  These latter statements tend to indicate that she was not objecting to her responsibility to pay, but instead rather attempting to reduce or delay payment. The Court therefore finds that, at most, the evidence of whether the debt was disputed is ambiguous, and that a reasonable person would not have clearly understood that Ms. Dixon denied responsibility to pay the debt.  As a consequence, Ms. Dixon cannot establish that the Defendant made a false or misleading representation when it failed to communicate to the credit reporting agencies that the debt was disputed, and the Defendant is entitled to judgment as a matter of law.

## IV.  Conclusion

For the forgoing reasons, the Plaintiff's Motion for Summary Judgment **(#35)** is **DENIED**.  Pursuant to Fed. R. Civ. P. 56(f), judgment shall enter in favor of the Defendant on all claims.  The Clerk is directed to close this case.

Dated this 17th day of February, 2015.

                    **BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge